## ALLARDYCE v. ABRAHAM et al. *

### No. 1799.

Court of Appeal of Louisiana. First Circuit.

Jan. 11, 1938.

*Rehearing denied 179 So. 317.

Bass & Patin, of Lake Charles, for appellant.

Griffin T. Hawkins, of Lake Charles, for appellees.

DORE, Judge.

On March 8, 1929, the defendant Abraham executed a mortgage note in favor of the Louisiana Mortgage Corporation, Inc., for the sum of $1,575, due on demand, with 8 per cent. interest from date. On February 5, 1932, the mortgage company executed its note in favor of Craft-Rushworth, Inc., for the sum of $1,051.28, due on demand, with 8 per cent. interest from date, and pledged as security for the payment of its note the mortgage note of Abraham on which there was then a balance due of $1,102.89.  The mortgage company paid a total of $400 on its note up to November 9, 1932, leaving a balance on that note of $651.28.

During all this time Mr. T. G. Trotti was the president and general manager of the mortgage corporation, and had been given full authority to transact all business of the corporation by a resolution of the board of directors.  Trotti handled all these transactions for the mortgage corporation from the acceptance of the mortgage from Abraham to the pledging of the mortgage note to Craft-Rushworth and the payments made on the mortgage corporation's note given to this creditor.  Craft-Rushworth began to press the mortgage company for payment of the balance due on its note, and, the mortgage corporation being unable to pay the note, Trotti gave the holders of this note oil stock which belonged to him personally from the dividends of which the balance due was applied by Craft-Rushworth to pay the balance due on the note of the mortgage company.  The note of the mortgage corporation, together with the mortgage note of Abraham which had been pledged to secure the note and the oil stock belonging to Trotti, was delivered to Trotti by the Craft-Rushworth Company, at which time Trotti was still president and general manager of the mortgage corporation.  Trotti transferred to the plaintiff, Mrs. Allardyce, his sister, the note of the mortgage company and the Abraham note which he had taken over from Craft-Rushworth.  Trotti claims that he bought the note of the mortgage company and secured possession of it together with the Abraham note pledged as security; that he then assigned these notes to his sister in payment of an indebtedness which he had been owing her for some time.  After this transfer was made, Trotti severed his connection with the mortgage corporation, or was discharged by the directors.

It is well to state here that prior to the pledge of the Abraham note to Craft-Rushworth by the mortgage corporation Abraham sold the property covered by the Abraham mortgage to the Title Guaranty & Mortgage Company for the balance due of $677.65, with interest, attorney's fees, and cost, with recognition of the mortgage on the property given to secure the note.  Mrs. Allardyce sues as holder and owner of the Abraham note, and no reference is made in her petition to the note. given by the mortgage corporation to Craft-Rushworth to which the Abraham note was attached

as security. Both defendants Abraham and the Title Guaranty & Mortgage Company answered, denying that the plaintiff is the owner of the note sued on, but they aver on information and belief that the Louisiana Mortgage Corporation, Inc., has never parted with title to said note.

The mortgage corporation filed an intervention in the suit claiming to be the owner of the note; that the note was never legally pledged to Craft-Rushworth to secure the note given by the mortgage corporation; that plaintiff never legally acquired the note, but that the entire transaction by which plaintiff came into possession of the note was a fraudulent scheme engineered by Trotti, while president and general manager of said mortgage corporation, for the purpose of defrauding the corporation. In the alternative, intervener alleged that in the event plaintiff is found to be a bona fide holder of the note to secure the balance paid by her on the original note given by intervener to Craft-Rushworth, that she be restricted in her recovery out of the proceeds to this balance which amounts to the sum of $392.12 with interest, and that the overplus be paid to intervener. In her answer to the intervention, plaintiff admits that she is only entitled to recover the above balance, interest, attorney's fees and costs.

Judgment was rendered ordering the property sold and out of the proceeds ordering plaintiff to be paid the amount of $392.12, with interest, attorney's fees, and cost, and the overplus, if any, to be paid to the intervener. The intervener has appealed.

There is no question but that Trotti paid out of his own funds the balance due Craft-Rushworth on the obligation of the mortgage corporation of which he was president and general manager. The corporation was unable to make the payment. Trotti had been given full authority to act for the corporation. He had an interest in protecting the credit and preserving the assets of the corporation. There was nothing to prevent him from taking his own property and satisfying a creditor of his corporation. It is the claim of Trotti that he bought the note of the mortgage company with the collateral Abraham note attached as security, and he thereby became the owner of the note with the pledge to secure it. and that he had a right to transfer the note and pledge to his sister, the plaintiff in this suit.

The Abraham note belonged to the mortgage corporation, and, when it was pledged to the Craft-Rushworth Company, it remained the property of the corporation. The Craft-Rushworth Company, as pledgee of this note, had no authority to transfer title to this pledged note to any one without express authority from the pledgor, or the waiver of pledgor's rights as the owner of the note. Ott v. Sanders, La.App., 147 So. 701. When the principal note of the mortgage corporation was paid by Trotti, this note with the pledged Abraham note was delivered to Trotti by the pledgee.

The payment by Trotti of the balance due on the note given by his corporation to Craft-Rushworth operated as a discharge of that note; and, that being true, the Abraham note held as security on the principal note remained the property of the mortgage corporation. The corporation then owed Trotti for the amount he had paid to liquidate its obligation. The original note came back into the hands of Trotti as president and general manager of the corporation as a paid note, and the Abraham note came back into his possession as the property of the corporation.

But, as Trotti had been given full power to handle all matters pertaining to the corporation, there was nothing to prevent him from holding this mortgage note for reimbursement of the amount which he had paid for the corporation. The corporation was in no worse position in having Trotti hold the Abraham note to secure the amount which he had advanced than it was when the Craft-Rushworth Company held it to secure the note due it. Instead of operating to the disadvantage of the corporation, the act of Trotti in paying the corporation's note operated to its benefit. The prohibition against an officer of a corporation acquiring or holding property of the corporation is based on the presumption that the officer in doing so is likely to use his position to promote his personal interest, and not that of the corporation toward which he sustains a fiduciary relationship. But there is nothing to prevent an officer of a corporation from advancing money out of his personal funds for the benefit of the corporation and taking security therefor on property

of the corporation, in the absence of fraud or some unfair advantage against the interests of the corporation. The directors of the corporation could have authorized Trotti to retain this Abraham note to secure reimbursement for the amount paid out by him for the corporation; and, under the power given him, Trotti could do what the directors could do in the interest of the corporation. There is certainly no fraud shown on the part ‗of Trotti nor any unfair advantage to the corporation.

On the contrary, if the corporation is permitted to realize the full benefit of Trotti's action in paying the note at a time when the corporation was unable to pay it, and not permit Trotti to secure himself by retaining the mortgage note, the injustice would operate against Trotti and not the corporation. In such a situation the courts have the equitable authority to see that the officer of the corporation who pays a just claim for it is not penalized for making the payment. New Orleans Building Co. v. Lawson, 11 La. 34, 37. No objection was made by the corporation to the payment by Trotti of its note, and the corporation cannot be heard to question this payment without refunding the amount paid for it. No creditor of the corporation is complaining of any preference to Trotti in holding the note and‑ in transferring it to his sister.

Trotti had a right to. transfer such interest in the note to the plaintiff as he had. It is conceded that there is a balance of $392.12 and interest still due on the amount paid by Trotti for the corporation, and the plaintiff, standing in his place, is entitled to recover that amount with interest and attorney's fees.

For these reasons, the judgment appealed from is affirmed.