182 So. 717

**ALLARDYCE v. ABRAHAMS et al. (LOUISIANA MORTGAGE CORPORATION, Inc., Intervener).**

No. 34865.

June 27, 1938.

Bass & Patin, of Lake Charles, for intervener.

Griffin T. Hawkins, of Lake Charles, for John D. Allardyce.

HIGGINS, Justice.

Plaintiff, claiming to be the holder and owner, for value and before maturity, of a certain promissory note in the sum of $1,-575, secured by a mortgage dated March 8, 1929, payable on demand to the order of the Louisiana Mortgage Corporation, Inc., signed by John H. Abrahams, bearing 8% interest and 10% attorney's fees for collection, the note having been assumed by the Title Guaranty & Mortgage Company on December 19, 1929, through a notarial act, wherein it acquired title to the mort-

gaged property, instituted this action via ordinaria against John H. Abrahams and the Title Guaranty & Mortgage Company for the alleged balance of $677.65, interest and attorney's fees and for recognition of the mortgage.

John H. Abrahams, the maker of the note, and the Title Guaranty & Mortgage Company, appearing in proper person, denied that the plaintiff was the owner of the note and averred on information that the Louisiana Mortgage Corporation, Inc., was the owner thereof.

The Louisiana Mortgage Corporation, Inc., filed an intervention, claiming the ownership of the note, and, in the alternative, in the event it be found that the plaintiff was the owner of the note, then her rights to the proceeds of the sale of the property should be limited to $392.12, with interest, and intervener be declared entitled to the remainder thereof.

The plaintiff answered the petition of intervention, denying that intervener was the owner of the note, but admitted that she had a right to recover only $392.12, the balance due her, and that intervener was entitled to the overplus.

There was judgment in favor of the plaintiff as holder of the note in due course for value for the sum of $392.12, with interest and attorney's fees and recognition of the mortgage, and it was also held that intervener was entitled to any amount in excess of that sum realized from the sale of the mortgaged property.

The trial court denied the motion for a new trial, stating that "it carefully review-ed the record and the jurisprudence cited by mover for a new trial and found no reason for any change in the conclusion reached in the original judgment."

The defendants and interveners suspensively appealed and the Court of Appeal affirmed the judgment of the lower court on the ground that plaintiff legally held the Abrahams' note as assignee or transferee of the pledgee for value and refused an application for a rehearing. 178 So. 170. This Court having granted a writ of review or certiorari, the matter is now before us.

The facts of the case may be stated as follows:

Prior to February 1932, Craft-Rushworth did certain plumbing work in an apartment owned by the Louisiana Mortgage Corporation, Inc., intervener, and charged therefor $1,051.28, for which amount it executed its promissory note dated February 5, 1932, and delivered it to its creditor. The debtor thereafter paid the sum of $400 on account of the note and when pressed for further payments, pledged to its creditor, the John H. Abrahams' mortgage note, which is the basis of this suit. Subsequently, Mr. Craft, of Craft-Rushworth, requested Mr. T. G. Trotti, President and General Manager of the intervener, to pay the balance of the note, otherwise legal proceedings would be instituted, and Mr. Trotti pledged four shares of stock which he personally owned in the Jim Oil Company. Craft-Rushworth continued to hold the original promissory and pledged mortgage note as well as the oil stock, from which dividends amounting to $677.65, with interest, were collected by

Craft-Rushworth, and applied in liquidating the balance due it. Thereafter both notes and the shares of oil stock were returned to Mr. Trotti at his office in the place of business of the Louisiana Mortgage Corporation, Inc. The note of the Louisiana Mortgage Corporation, Inc., payable to Craft-Rushworth was not endorsed by the payee nor was it agreed in writing that Mr. Trotti was personally purchasing this note. Mr. Trotti, as President and General-Manager of the intervener corporation, under a resolution adopted by its Board of Directors, had general and unlimited authority to handle all matters pertaining to the corporation. He transferred and assigned the Louisiana Mortgage Corporation, Inc., note and delivered the collateral John H. Abrahams' mortgage note to his sister, in part payment of a debt of about $1,200, which he owed his sister since 1918. Mr. Trotti then opened an account in the Calcasieu National Bank in the name of "Mrs. J. D. Allardyce (his sister) per T. G. Trotti, attorney-in-fact" (with general and unlimited power, as per written power of attorney), and payments made on the Abrahams' note were deposited in this account and Mrs. Allardyce notified thereof. Approximately $300 was paid on the Abrahams' mortgage note by the Title Guaranty & Mortgage Company after Mr. Trotti had opened the account in the name of his sister, thereby reducing the amount that he had advanced out of his personal funds, on account of the Louisiana Mortgage Corporation's note to the sum of $392.12.

■ The first question presented is whether or not Mr. Trotti bought intervener's secured note or merely paid it—thereby extinguishing the primary obligation and requiring him to return to the corporation the pledged Abrahams' mortgage note.

We disagree with the Court of Appeal in its conclusion that it was not Mr. Trotti's intention to purchase the intervener's note from Craft-Rushworth. The evidence amply supports the written opinion of the trial judge, who found that the preponderance of the testimony showed that Mr. Trotti intended to buy the rights of Craft-Rushworth in the notes and did not contemplate advancing his personal funds to pay the corporation's debt. He was seeking to assist the corporation out of its financial trouble with the pressing creditor and at the same time to secure the money he advanced to purchase the intervener's secured note. Mr. Trotti clearly intended and sought to place himself in the same position as the creditor from whom he acquired his rights. He knew that the debtor could not pay and he protected himself by simply buying or acquiring the secured note of the intervener.

■ While fraud was alleged, it was not proved, and good faith, and lack of injury and fraud, were shown by the plaintiff. Our views are in accord with those of the trial judge on this issue.

■ Was Mr. Trotti legally barred from acquiring the intervener's secured note by reason of his then official connection with the corporation?

There is evidence tending to show that other officers of the corporation were cog-

nizant of the manner in which Mr. Trotti handled the transaction and made no complaint. There is no doubt that the intervener corporation was in a financial dilemma at the time Mr. Trotti came to its rescue with his personal funds. The manner in which the transaction was handled was not detrimental or harmful but was entirely to the interest of the corporation. It was optional with the corporation, if its officers felt that it was injured or damaged, to request that the transaction be set aside as being voidable. In the instant case, the corporation is seeking to retain all of the benefits of Mr. Trotti's action in using his personal funds in acquiring its note and to set aside that part of the transaction which is onerous. In short, it wants all the benefits but repudiates only the disadvantages of having Mr. Trotti or his assignee or transferee enjoy the same security that its creditor had. To maintain the position of the intervener would certainly mean that the intervener would profit at the expense of plaintiff to the amount that she is suing for. If the Court of Appeal's judgment is followed, plaintiff will not profit one penny at the expense of the defendants or intervener. While intervener admits that it owed Mr. Trotti $677.65, the amount that he paid to Craft-Rushworth from his personal funds, in asking that the transaction be set aside, it has not tendered or offered to pay him or plaintiff that amount. Intervener cannot retain the advantages and reject the disadvantages of the transaction. It must either ratify or reject the matter in toto. Fletcher's Cyc. Corpn., 1931 Ed., Vol. 3, Chapter 11. Secs. 924–926.

 For the reasons assigned, it is ordered, adjudged and decreed that the writ of certiorari is recalled and the judgments of the district court and the Court of Appeal are affirmed at relator's costs.